RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0213p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

ZEINAB JAMIL EL-MOUSSA,

  *Petitioner,*

*v.*

No. 08-3982

ERIC H. HOLDER, JR., Attorney General,

  *Respondent.*

On Petition for Review of a Decision
of the Board of Immigration Appeals.
No. A96 419 706.

Argued: April 30, 2009

Decided and Filed: June 17, 2009

Before: KENNEDY, GIBBONS, and ROGERS, Circuit Judges.

—————————————

**COUNSEL**

**ARGUED:** Frank Gregory Becker, FRANK G. BECKER & ASSOCIATES, P.C.,
Southfield, Michigan, for Petitioner. Susan Bennett Green, U.S. DEPARTMENT OF
JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Frank Gregory Becker,
FRANK G. BECKER & ASSOCIATES, P.C., Southfield, Michigan, for Petitioner. Susan
Bennett Green, U.S. DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

—————————————

**OPINION**

—————————————

ROGERS, Circuit Judge. Zeinab El-Moussa petitions for review of a Board of
Immigration Appeals decision denying her application for asylum, withholding of removal,
and protection under the Convention Against Torture. El-Moussa asserts that her failed
marriage to a Lebanese imam, whom she met and married shortly after entering the United
States, and her subsequent marriage to a Christian, place her at risk of violence if she returns
to Lebanon. The Immigration Judge denied El-Moussa's asylum claim because she did not

apply for asylum within one year of entering the United States. Her claim does not fall under one of the exceptions that would give this court jurisdiction to review a denial based on untimeliness. El-Moussa does not qualify for relief on either of her other two claims because the IJ's determination that El-Moussa did not testify credibly is entitled to deference under the standards set forth in the REAL ID Act of 2005.

## I.

Zeinab El-Moussa, a native and citizen of Lebanon, entered the United States on September 19, 2001, with a six-month tourist visa. Her stated reason for coming to the United States was to care for her ailing mother, who has resided legally in this country since 1999. El-Moussa received two extensions, which allowed her to stay until March 18, 2003. She did not leave the country when her extended visa expired. Instead, she remained in the United States with no official status. INS served El-Moussa with a Notice to Appear on December 6, 2004. After several initial hearings, El-Moussa appeared before an IJ on November 17, 2005, and filed an application for withholding of removal and protection under the Convention Against Torture. At that hearing, her attorney conceded that El-Moussa was not eligible for asylum because she did not file her application within one year of entering the United States.

El-Moussa explained in her application that, after entering the United States, she married an imam named Haydar Jawad. This marriage, which took place under Islamic law and has since been terminated under the same law, never became official under U.S. law because Jawad was already married to another woman. El-Moussa listed various ways that her ex-husband had abused her, including giving her drugs to cause her to miscarry, threatening to have her killed if she returned to Lebanon, threatening to have her deported, taking away her passport, and beating her. She stated in her application that she feared returning to Lebanon because Jawad, who was a member of Hezbollah and a man of standing in the Lebanese community, could easily have her killed there.

The merits hearing was scheduled for March 7, 2007, more than fifteen months later. In the meantime, on February 19, 2007, El-Moussa filed an addendum to her application, stating that changed circumstances both in Lebanon and in her personal situation made her eligible for asylum. With regard to her personal situation, she reported that since the time

of her divorce from Jawad, she had married a Christian man and given birth to two children. According to El-Moussa, her marriage was a violation of Islamic law and placed her life in danger should she return to Lebanon. El-Moussa's testimony at the hearing ultimately led the IJ to conclude that El-Moussa's account lacked credibility and that El-Moussa's fear of persecution was based on her deteriorated relationship with her ex-husband rather than on a protected ground. At the hearing, El-Moussa testified about several instances of abuse. She recounted a time when her husband came to the Arabic school where she taught and dragged her out of the classroom by her hair. El-Moussa also submitted a letter from a co-worker who recounted learning about the incident from El-Moussa's students, looking for El-Moussa, and not finding her. El-Moussa testified in contrast that the co-worker did find her after the beating and brought her back into a classroom to comfort her. El-Moussa acknowledged that her co-worker's account differed from her own, and said that fear prevented her co-worker from testifying at the hearing.

El-Moussa also testified that at the time of this beating she was six weeks pregnant. Later on the day of the beating, her husband gave her some medicine for abdominal pain resulting from the beating. The medicine caused her to start bleeding. After the bleeding continued for nine days, El-Moussa's husband took her to a clinic. El-Moussa testified that the nurse told her that, because of all the bleeding, the child could not be brought to term. Instead, El-Moussa received an abortion. In apparent contradiction to El-Moussa's testimony, her medical records reflect a normal pregnancy and an elective abortion.

El-Moussa also testified about a civil lawsuit she pursued and won against Jawad. The first time she mentioned the lawsuit was in the context of the poisoning/abortion account, and the implication was that the suit somehow arose from that incident. El-Moussa later gave more details about the lawsuit, saying that she was awarded $4,900 that Jawad had stolen from her. The pleadings that El-Moussa filed in the civil lawsuit indicate that Jawad induced her to marry him by promising to sponsor her for citizenship and to provide a home for her. After the marriage, he asked her to give him $4,800 to rent a house, and she gave him the money. Jawad did not keep either promise. Instead he abused and threatened El-Moussa. The pleadings do not mention the poisoning/abortion incident. El-Moussa won a $4,900 judgment against Jawad. Based on the documents from her civil case and El-Moussa's initial reticence to discuss the fact that the lawsuit was about money, the IJ

concluded that El-Moussa's marriage to Jawad had primarily been for the purpose of obtaining citizenship.

After divorcing Jawad, El-Moussa met and married Wisam Halia, a native Iraqi and naturalized U.S. citizen. Halia is a Christian; however, he and El-Moussa married under Islamic law. Like El-Moussa's previous marriage, this marriage is also unofficial because Wisam's divorce from another woman has been pending for three years. While El-Moussa explained that the initial delay in finalizing the divorce occurred because Halia left the country to serve as a contractor with the U.S. military, she was unable to explain why the divorce had not been finalized in the year and a half since Halia's return. El-Moussa testified that she has since given birth to twins, the children of Halia. She did not present official birth certificates for these children, although she did present documents issued by the hospital.

El-Moussa testified that she fears reprisal in her own country because of Jawad's connections to Hezbollah and because she married and bore children to a Christian man. She testified that Jawad had told others of his intent to harm her if she returned to Lebanon, but that she believed she would be safe in the U.S. because of the rule of law. She also testified that she fears Hezbollah will issue a fatwa against her because she has breached Islamic tradition by marrying a Christian man. When specifically asked on cross-examination, she testified that her siblings in Lebanon had warned her that people were looking for her in Lebanon.

At the conclusion of the testimony, the IJ dismissed the translator, after asking whether there was any objection, and hearing none. The IJ then heard closing arguments and discussed procedural matters with El-Moussa's attorney. Near the conclusion of El-Moussa's closing argument, the IJ asked the attorney to provide official versions of various documents. Six weeks later, having received no additional documents, the IJ issued his decision. The opinion was issued on April 19, 2007.

The IJ denied all relief. Several grounds supported the denial of asylum and withholding of removal. First, the IJ barred El-Moussa's asylum application as untimely. The IJ found that no extraordinary circumstances excused the late filing. He also found that general unrest in Lebanon and El-Moussa's remarriage did not constitute changed

circumstances, because neither circumstance materially affected her eligibility for asylum. Further, the IJ found that El-Moussa's account was not credible. In addition to noting the inconsistencies stated above, the IJ also noted that El-Moussa testified that she had not seen Jawad since her divorce, while her current husband testified that she had seen Jawad at his deposition for her civil suit. The IJ also noted that El-Moussa did not say anything about a warning from her siblings either in her asylum application or on direct examination, but claimed for the first time on cross-examination that her siblings told her that people were looking for her in Lebanon. Furthermore, El-Moussa failed to submit reasonably available corroborating evidence, such as birth certificates for her children.

Six days after the opinion was issued, El-Moussa filed additional evidence and a motion to reopen. The IJ issued an order denying the motion. The IJ noted that, although the court had agreed to consider additional evidence, it had not given the petitioner any date certain before which the opinion would not issue. The IJ therefore denied the motion without considering the new evidence. However, the IJ went on to state that the new evidence, even if considered, did not overcome El-Moussa's general lack of credibility or the court's conclusions that any harm she feared was not due to a protected ground.

El Moussa appealed the denial of her claim to the Board. She also asserted bias by the IJ, error in the allegedly premature dismissal of the translator, and prejudice-causing errors in translation and transcription. The Board affirmed the IJ's decision in its entirety, noting that the record supported the IJ's adverse credibility finding. Further, the Board found no evidence that the IJ was biased or that the IJ erred by dismissing the translator at the end of the testimony. The Board also determined that the transcript remained understandable despite minor errors identified by El-Moussa. The Board concluded that any translation errors had been adequately addressed on the record as they arose. Finally, the Board affirmed the denial of the motion to reopen, concluding that the IJ did not err by issuing the opinion before the supplemental evidence arrived. The Board noted that El-Moussa was not prejudiced by the denial, as the evidence she submitted would not have overcome the adverse credibility determination.

**II.**

As an initial matter, this court does not have jurisdiction to review the IJ's decision that El-Moussa's asylum application was untimely and that no changed circumstances materially affecting her application have occurred.  An alien who, like El-Moussa, fails to file a timely application may still qualify for asylum if she demonstrates "the existence of changed circumstances which materially affect [her] eligibility for asylum"; however, the effectiveness of this demonstration is within the discretion of the administrator and is not subject to review by this court.  8 U.S.C. § 1158(a)(2)(D), (3).  The IJ rejected El-Moussa's claim of changed circumstances for several reasons.  First, the IJ noted that the circumstance giving rise to El-Moussa's claim for protection was her divorce from Jawad and that she did not demonstrate that she filed her application within a reasonable time after her divorce, as 8 C.F.R. § 1208.4(a)(4)(ii) requires her to do.  The IJ also held that general unrest in Lebanon, El-Moussa's remarriage, and the birth of her children did not constitute changed circumstances because they did not materially affect her eligibility for asylum.  The Board affirmed these conclusions.

Although this court has jurisdiction to review untimeliness decisions where the petitioner raises constitutional claims or matters of statutory construction, it does not have jurisdiction to review claims like El-Moussa's that raise discretionary or factual questions. *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006).  Although El-Moussa purports to raise "due process" issues, her claim—that changed circumstances in her personal situation make her eligible to apply for asylum and that the IJ failed to properly evaluate her situation—is factual, not constitutional, for purposes of the statutory preclusion of review.  El-Moussa does not overcome the limits on this court's jurisdiction merely by adverting to "due process."

**III.**

With respect to El-Moussa's other claims, affirmance is required because of the deference we owe to the IJ and the Board on the issue of credibility.  El-Moussa cannot demonstrate entitlement to withholding of removal or protection under the torture convention because the evidence in this case does not compel reversal of the IJ's adverse credibility determination.  The IJ identified six areas where El-Moussa's testimony was inconsistent

with either her asylum application, other documentary evidence in the record, or other testimony.    Although not every inconsistency identified by the IJ is beyond debate, substantial evidence supports the IJ's findings.  For instance, El-Moussa's testimony that she went to the clinic because of persistent bleeding is inconsistent with the record of her pre-operative examination, which reflects no abnormal bleeding or discharge.  Likewise, while the IJ could have regarded the conflicts between El-Moussa's account of the school beating and her co-worker's account as mere differences in memory, the evidence does not compel such a conclusion.

Another circumstance that raised the IJ's suspicions about the credibility of the entire application was the civil lawsuit El-Moussa filed against Jawad.  El-Moussa initially indicated that the lawsuit concerned Jawad's physically abusive behavior.  She later elaborated that the lawsuit had to do with money he had taken from her.  However, the record of that lawsuit indicates that the lawsuit was partially motivated by Jawad's failure to follow through on a promise to help El-Moussa obtain citizenship.  The IJ therefore found, contrary to El-Moussa's testimony at the immigration hearing, that El-Moussa entered into the marriage with Jawad for the purpose of obtaining citizenship.  The facts do not compel a contrary conclusion.

Because the Board adopted the IJ's decision in full before adding brief additional analysis, we review the IJ's decision directly while also considering the Board's additional analysis. *Gilaj v. Gonzales*, 408 F.3d 275, 282-83 (6th Cir. 2005).  The IJ denied relief and the BIA upheld the decision based on the IJ's finding that El-Moussa did not testify credibly.  We review the IJ's credibility determination under the deferential "substantial evidence" standard. *Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004).  An administrative finding of fact, such as the adverse credibility determination here, is "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *See* 8 U.S.C. § 1252(b)(4)(A), (B).  Moreover, "a decision that an alien is not eligible for admission to the United States is conclusive unless manifestly contrary to law." *Id.* § 1252(b)(4)(C).  While the IJ's adverse credibility determination can be questioned in some respects, the substantial evidence supporting the IJ's finding calls for denial of this petition.

This case appears to be one of the first in which the stricter review provided by the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 302, applies to credibility determinations. The credibility standards of the Act apply to applications for asylum, withholding of removal, or other relief from removal filed on or after May 11, 2005. *Id.* at § 101(h)(2), 119 Stat. at 305. Under the previous law of this circuit, an IJ could base an adverse credibility determination only on "issues that [went] to the heart of the applicant's claim" and not on "irrelevant inconsistencies" or inconsistencies that could not be viewed "as attempts by the applicant to enhance his claims of persecution." *Sylla v. I.N.S.*, 388 F.3d 924, 926 (6th Cir. 2004) (quotations and citations omitted). Under the REAL ID Act, credibility determinations are based on the "totality of the circumstances" and take into account "all relevant factors." 8 U.S.C. § 1158(b)(1)(B)(iii). These factors include:

> the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, *without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.*

*Id.* (emphasis supplied) (asylum). The same credibility standard applies to claims for asylum, withholding of removal, and for relief under the torture convention. *See* 8 U.S.C. § 1229a(c)(4)(C) (applying identical language to proceedings for relief from removal).

Under this new standard, the IJ's adverse credibility determination would stand even if this court would come to a different conclusion under prior law. Congress doubtless has power to narrow our review this way. The IJ made several findings that El-Moussa's testimony contradicted her written application or the testimony of her corroborating witnesses. These findings, which are supported by the record, entitle the IJ's overall adverse credibility determination to deference, regardless of whether the inconsistencies bear on the heart of El-Moussa's claim. This interpretation of the REAL ID Act's credibility standard is consistent with that of five other circuits that have considered the new standard in published opinions. *See Wang v. Holder*, — F.3d —, 2009 WL 1519805, at *5-7 (5th Cir. June 2, 2009); *Krishnapillai v. Holder*, 563 F.3d 606, 616-17 (7th Cir. 2009); *Qun Lin v.*

*Mukasey*, 521 F.3d 22, 26-27 (1st Cir. 2008); *Lin v. Mukasey*, 534 F.3d 162, 165-68 (2nd Cir. 2008); *Chen v. U.S. Attorney General*, 463 F.3d 1228, 1231-33 (11th Cir. 2006).

The IJ's adverse credibility finding is fatal to all three of El-Moussa's claims for relief. El-Moussa's argument that the Government did not present evidence to refute her claims of persecution reveals a fundamental misunderstanding of the nature of the relief she seeks. Applicants for asylum, withholding of removal, and protection under the torture convention have an affirmative duty to demonstrate entitlement to each form of relief. An IJ need not credit an applicant's testimony or supporting evidence even in the absence of refutation. For each claim here, El-Moussa bore a burden of proof that she could not meet unless the court credited her testimony. The adverse credibility finding thus provides an alternative ground for upholding the denial of asylum and a primary ground for denying the other claims. To establish eligibility for asylum, El-Moussa needed to demonstrate a well-founded fear of future persecution. *Gilaj*, 408 F.3d at 283. The standard to qualify for withholding of removal is even higher, requiring El-Moussa to demonstrate a clear probability that she would more likely than not be subject to persecution if she returned to Lebanon. *Almuhtaseb*, 453 F.3d at 749. Protection under the torture convention is only available to an alien who establishes that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). The IJ's finding that El-Moussa did not testify credibly precludes her from meeting any of these burdens of proof.

**IV.**

The Board correctly held that the IJ did not demonstrate bias against El-Moussa, that the IJ did not commit reversible error by dismissing the translator at the end of the testimony, and that El-Moussa was not prejudiced by any errors in translation or transcription. El-Moussa's claim of bias appears to stem from her misunderstanding of the burden of proof that she faced at her removal hearing. For instance, she objects to the IJ's decision not to credit her testimony and the testimony of her corroborating witnesses, given that the Government did not present contrary evidence. She also accuses the IJ of attempting to subvert reality because he did not accept facts, such as the existence of her two children, for which she failed to submit verified documentation. Because El-Moussa bore the burden of

proof to establish her entitlement to each form of relief she sought, the Government was not required to present evidence, nor was the IJ required to give El-Moussa the benefit of the doubt.

With regard to the dismissal of the translator, El-Moussa's attorney consented to the dismissal and the only question which arose after the dismissal that might have called for translation was resolved through documentary evidence. That issue was whether El-Moussa had been fingerprinted, and El-Moussa's attorney quickly located a record that resolved the issue.

El-Moussa has not effectively argued the presence of defects in the transcript of her removal hearing. El-Moussa fails to tell this court what the defects were, to explain or document her arguments to the Board on this matter, or to say why the Board's determination was incorrect. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quotation and alterations thereto omitted).

## V.

For the foregoing reasons, the petition for relief is DENIED.