**XIANG JING LIN, Petitioner**

v.

**ATTORNEY GENERAL OF
the UNITED STATES,
Respondent.**

**No. 08–4026.**

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Third Circuit
LAR 34.1(a) Oct. 7, 2009.

Filed: Oct. 13, 2009.

Fengling Liu, Esq., New York, NY, for
Petitioner.

Thomas B. Fatouros, Esq., Thomas W.
Hussey, Esq., Glen T. Jaeger, Esq., United
States Department of Justice Office of Im-
migration Litigation, Washington, DC, for
Respondent.

Before: SCIRICA, Chief Judge, and
CHAGARES and ALDISERT, Circuit
Judges.

OPINION OF THE COURT

PER CURIAM.

Xiang Jing Lin, a native and citizen of
China, arrived in the United States in
March 2005. He appeared before an Im-
migration Judge ("IJ") and conceded that
he was removable for entering the United
States without being admitted or paroled.
*See* Immigration and Nationality Act
("INA") § 212(a)(6)(A)(i) [8 U.S.C.
§ 1182(a)(6)(A)(i)]. In March 2006, Lin
applied for asylum, withholding of removal,
and relief under the Convention Against
Torture ("CAT"), alleging that he suffered
persecution as a Falun Gong practitioner.
The Immigration Judge ("IJ") denied re-
lief, finding that Lin was not credible,
failed to provide reasonably available cor-
roborative evidence, and did not establish
that he was likely to be tortured in China.
The Board of Immigration Appeals
("BIA") dismissed Lin's appeal, but relied
on only two of the IJ's adverse credibility
findings.[1] Lin has filed a petition for re-
view of the BIA's decision.

---

1. The BIA rejected the IJ's decision to base its adverse credibility finding on alleged omissions and discrepancies concerning the date Lin began practicing Falun Gong and the date

he was arrested. In addition, the Board specifically declined to address the IJ's conclusion that Lin failed to provide adequate evidence corroborating his claims.

We have jurisdiction under INA § 242(a)(1) [8 U.S.C. § 1252(a)(1) ]. When the BIA accepts some of an IJ's adverse credibility findings and rejects others, "the scope of the Court's review [ ] includes both the BIA's decision and the portion of the IJ's decision that was left unchallenged in front of the BIA." *Douglas v. Ashcroft,* 374 F.3d 230, 234 (3d Cir.2004). We review factual findings, including adverse credibility determinations, for substantial evidence, and must affirm them unless "a reasonable factfinder would be compelled to conclude otherwise." *Chavarria v. Gonzalez,* 446 F.3d 508, 515 (3d Cir.2006). "So long as the BIA's decision is supported by 'reasonable, substantial, and probative evidence on the record considered as a whole, we will not disturb the BIA's disposition of the case.'"[2] *Id.* (quoting *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992)).

While in college studying law, Lin began to secretly practice Falun Gong with his "supervisor" and several classmates. The college's Communist Party Committee discovered them and notified the security bureau. Consequently, Lin was arrested and detained for 48 hours, during which he allegedly "suffered severe torture and interrogation." Lin graduated from college in July 2002 with a specialized degree in law, but, because a record of the arrest appeared in his college file, employers refused to hire him for law-related jobs. Although Lin was later accepted into law school, his acceptance was revoked after a background check revealed his arrest.

The BIA based its adverse credibility determination on two alleged discrepancies. The first involved Lin's claim, both in his written asylum statement and in his testimony, that he was permitted to finish college after his arrest. *See* Administrative Record ("A.R.") 145–46, 228. According to the BIA, this allegation conflicted with a statement made by Lin's father in a letter to the IJ. In that letter, Lin's father asserted that "[b]ecause [Lin] once was detained for practicing Falun Gong, he was excluded from the college." *Id.* at 206. When asked about this alleged discrepancy, Lin explained that his father "is not sure because during the time when he came to visit me I told my father I will get excluded." *Id.* at 147. This explanation is likely adequate, especially considering that upon his release from detention, Lin had been told that he was "going to face disciplinary action from the college." *Id.* at 120. In addition, Lin's father also acknowledged, at least implicitly, that Lin was able to pursue his education, noting that Lin's "study, life, and work were severely suppressed" following his detention. *Id.* at 206. At bottom, the BIA appeared to believe that Lin did not credibly testify about finishing college. Importantly, however, Lin provided a copy of his college diploma. *Id.* at 184, 188. In light of this objective evidence of Lin's graduation, the BIA's credibility determination is not supported by substantial evidence.

The second adverse credibility determination centered on an alleged inconsistency in Lin's work history. Lin testified that

---

**2.** Because Lin applied for relief after May 11, 2005, the BIA's credibility determinations are governed by the REAL ID Act of 2005. Under the REAL ID Act, an IJ may base her credibility determination on observations of the applicant's demeanor, the plausibility of the applicant's story, and on the consistency of the applicant's statements. *See* INA § 208(b)(1)(B)(iii) [8 U.S.C. § 1158(b)(1)(B)(iii) ]; *Gabuniya v. Att'y Gen.,*

463 F.3d 316, 322 n. 7 (3d Cir.2006). Although we have not considered whether this provision is consistent with due process, *see El–Moussa v. Holder,* 569 F.3d 250, 256 (6th Cir.2009) (citing "five other circuits that have considered the new standard in published opinions"), we note that Lin's challenge to the BIA's adverse credibility finding would also fail under the pre-REAL ID Act standard.

"[f]rom '02 all the way to '05 I basically cannot find a job." A.R. 127. The IJ later asked Lin a series of questions about his efforts to find law-related jobs, such as whether Lin "looked for any other line of work for that three years to see if there was something else you could do with your college degree." *Id.* at 133. Lin replied that he did not. *Id.* Later, the IJ asked a significantly broader question: "[w]hat did you do from 2002 to 2005 ... [o]ther than practice Falun Gong two to three times a week and send[ ] out 40 or 50 resumes in a three-year period." *Id.* at 137. Lin replied that he had done nothing else. *Id.* On his asylum application form, however, Lin indicated that he worked as a Director for the Fuzhou Goods Circulation Company from September 2002 until March 2005. A.R. 221. The Government attorney noted that "the Judge asked you whether you worked from 2002 until 2005, [and] you never mentioned that you were director of the Fuzhou Goods Circulation Company." A.R. 152. Lin replied, "[t]hat had nothing to do with the law." Lin also explained that the company transported goods between supermarkets, that he worked there part time for a "[t]otal combined" period of one or two months, and that he performed only "odd jobs." *Id.* at 150–52. We agree with the BIA that these explanations are inadequate. Lin's failure to mention his job at the Fuzhou Goods Circulation Company in response to specific questions about his employment history during a discrete period of time is sufficient to support the adverse credibility determination.

Finally, the BIA properly denied Lin's CAT claim because the record contains no evidence that anyone in the Chinese government, or acting with its acquiescence, seeks to torture him. *See Tarrawally v. Ashcroft*, 338 F.3d 180, 187–88 (3d Cir. 2003); 8 C.F.R. § 208.16(c)(2).

For these reasons, we will deny Lin's petition for review.