**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a1201n.06

No. 12-3117

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| LIMANTRO HAKIM; SHU HU, | ) | |
| | ) | **FILED** |
| Petitioners, | ) | *Nov 20, 2012* |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | ON PETITION FOR REVIEW |
| ERIC H. HOLDER, JR., Attorney General, | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| Respondent. | ) | APPEALS |
| | ) | |

BEFORE: McKEAGUE and GRIFFIN, Circuit Judges; DLOTT, Chief District Judge.[*]

PER CURIAM. Limantro Hakim and his wife, Shu Hu, petition for review of an order of the Board of Immigration Appeals (BIA) dismissing their appeal from an immigration judge's (IJ) decision denying Hakim's application for withholding of removal and protection under the Convention Against Torture (CAT). Because substantial evidence supports the agency's adverse credibility finding, we deny the petition for review.

Hakim, a native and citizen of Indonesia, entered the United States as a nonimmigrant visitor for pleasure in 1998. Hakim filed his initial application for asylum, withholding of removal, and protection under the CAT (Form I-589) in 2002. Hakim subsequently married Hu, a native and citizen of China. In 2009, the Department of Homeland Security served Hakim and Hu with notices to appear charging them with removability under § 237(a)(1)(B) of the Immigration and Nationality

_____

[*]The Honorable Susan J. Dlott, Chief United States District Judge for the Southern District of Ohio, sitting by designation.

Act, 8 U.S.C. § 1227(a)(1)(B), as nonimmigrants who remained in the United States for a time longer than permitted. Hakim and Hu appeared before an IJ, admitted the factual allegations contained in the notices to appear, and conceded removability as charged. Hakim submitted an updated Form I-589, claiming mistreatment in Indonesia based on his Chinese ethnicity. Hu withdrew her own Form I-589 and sought relief as a derivative beneficiary of Hakim's application.

After a hearing, at which both Hakim and Hu testified, the IJ denied Hakim's application for asylum, withholding of removal, and protection under the CAT and ordered Hakim's removal to Indonesia and Hu's removal to China. The IJ found that Hakim was statutorily ineligible for asylum because he failed to file his initial Form I-589 within one year of his arrival in the United States and failed to demonstrate changed or extraordinary circumstances to allow consideration of his asylum application. *See* 8 U.S.C. § 1158(a)(2)(B), (D). The IJ went on to make an adverse credibility finding based on the internal inconsistencies in Hakim's testimony, the inconsistencies between his testimony and his application, the inconsistencies between his and Hu's testimony, and his failure to present corroborative evidence. The IJ also found that Hakim failed to establish a nexus between his alleged mistreatment and a protected statutory ground. With respect to relief under the CAT, the IJ found that Hakim had not been subjected to torture in Indonesia and that there was no evidence that the Indonesian government would torture him or allow someone to torture him in the future.

Hakim and Hu appealed the IJ's decision, but they did not challenge the IJ's denial of asylum. The BIA upheld the IJ's adverse credibility finding as not clearly erroneous. The BIA concluded that, given the absence of evidence independent of his own non-credible testimony, Hakim failed to establish eligibility for withholding of removal and protection under the CAT. Accordingly, the BIA affirmed the IJ's decision and dismissed the appeal.

Hakim and Hu filed a timely petition for review of the BIA's order, asserting that the adverse credibility determination is not supported by substantial evidence. Where, as here, "the Board affirms the IJ's ruling but adds its own comments, we review both the IJ's decision and the Board's additional remarks." *Karimijanaki v. Holder*, 579 F.3d 710, 714 (6th Cir. 2009). Adverse credibility findings are findings of fact reviewed for substantial evidence and are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *El-Moussa v. Holder*, 569 F.3d 250, 255-56 (6th Cir. 2009). The provisions of the REAL ID Act of 2005 do not apply to this case because Hakim filed his initial application prior to the Act's effective date; therefore, the adverse credibility determination "must be supported by specific reasons and must be based upon issues that go to the heart of the applicant's claim." *Abdurakhmanov v. Holder*, 666 F.3d 978, 982 & n.3 (6th Cir. 2012).

In support of his claim that he was mistreated on account of his Chinese ethnicity, Hakim primarily relied upon: (1) being beaten and robbed by Indonesian students throughout junior high and high school and (2) his home being burned down in a neighborhood fire started by Indonesians. The IJ and the BIA based the adverse credibility determination on inconsistencies with respect to these issues going to the heart of Hakim's claim.

In his Form I-589, Hakim asserted that, when he walked home from school, Indonesian students assaulted him and took his money. Hakim's application stated: "I informed my teachers about what happened, but they were native Indonesians and just told me to go home at a later time to avoid those students." At the hearing before the IJ, Hakim testified that he told only his parents about being beaten and robbed by Indonesian students and that he did not tell his teachers. When

confronted with this inconsistency on cross-examination, Hakim testified that he told his teacher once and that "if I made a mistake then it was my mistake."

With respect to the fire, Hakim asserted in his Form I-589 that "my house was one of approximately eight to ten houses occupied by Chinese-Indonesians that were burned down as a result of a fire started by native Indonesians in our area." At the hearing, however, Hakim testified that half of the houses that burned down were owned by Chinese Indonesians and the other half were owned by Indonesian Muslims. Hakim does not dispute the inconsistency, but contends that his reassessment of who owned the burned houses was against his self-interest and reflected his candor and honesty. In addition, Hakim stated in his application: "We could not report what had happened to the police because at the time the police department was made up of only native Indonesians as Chinese-Indonesians were not permitted to join." But Hakim testified at the hearing that the police came and talked with his parents about the fire. While Hakim asserts that there was no inconsistency as to whether his parents filed a complaint with the police, his Form I-589 implies that the police conducted no investigation into the fire and did not speak with his family, which is inconsistent with his testimony.

Hakim's testimony about the fire was inconsistent not only with his application but also his wife's testimony. Hakim testified that he was coming home from the university around 6:30 p.m. when he encountered people running out of the alley and saying "fire, fire." In contrast, Hu testified that Hakim told her that he was sleeping when the fire started and that he had to run out of the house to escape. Hakim argues that Hu's testimony "was based on ten-year old, emotionally-charged hearsay in a language neither she nor Petitioner well-understood." Hakim confuses Hu's testimony regarding what he told her about the fire with her testimony about his nightmares. The record does

not reflect when Hakim and Hu last discussed the fire, as opposed to his nightmares about the fire, or in what language. Regardless of whether Hu's testimony about what Hakim told her constitutes hearsay, the Federal Rules of Evidence do not apply in immigration proceedings. *Alexandrov v. Gonzales*, 442 F.3d 395, 404 (6th Cir. 2006).

Hakim contends that neither the IJ nor the BIA explained how affidavits from parents and friends were reasonably available and how their absence supported an adverse credibility finding. But Hakim's testimony was not "otherwise credible." 8 U.S.C. § 1158(b)(1)(B)(ii) ("Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence."). Where an applicant's testimony could be viewed as incredible, inconsistent, or incoherent, as in this case, the failure to provide corroborating evidence may provide further support for an adverse credibility determination. *See Zhao v. Holder*, 569 F.3d 238, 248-49 (6th Cir. 2009); *Pilica v. Ashcroft*, 388 F.3d 941, 954 (6th Cir. 2004).

Given the internal inconsistencies in Hakim's testimony, the inconsistencies between his testimony and his application, and the inconsistencies between his and Hu's testimony, as well as Hakim's failure to corroborate his claims, the record does not compel a contrary credibility determination. *See Zhao*, 569 F.3d at 249; *Yu v. Ashcroft*, 364 F.3d 700, 703-04 (6th Cir. 2004). Because he "failed to satisfy the threshold showing of credibility," Hakim cannot demonstrate that he is entitled to withholding of removal or protection under the CAT. *Zhao*, 569 F.3d at 249. Accordingly, we deny the petition for review.