**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0537n.06

No. 12-3722

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

OMAR IDE ABDOU,

     Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

     Respondent.

                           /

ON PETITION FOR REVIEW OF
AN ORDER OF THE BOARD
OF IMMIGRATION APPEALS

BEFORE:    KEITH, CLAY, and KETHLEDGE, Circuit Judges.

**CLAY, Circuit Judge.**  Petitioner Omar Abdou, a citizen of Niger, overstayed his visitor's

visa and was ordered to appear before an immigration judge to defend against charges that he was

removable.  Petitioner now petitions this Court for review of a Board of Immigration Appeals'

decision affirming the immigration judge's decision denying Petitioner asylum, withholding of

removal, and protection under the Convention Against Torture.  For the following reasons, we

**DENY** the petition for review.

**BACKGROUND**

Petitioner Omar Abdou entered the United States from his native Niger on a B1/B2 visitor's

visa in December 2003.  Under the terms of that visa, which was purportedly obtained to attend

World Bank training, Petitioner was to depart no later than March 10, 2004. Petitioner never attended the training and overstayed his visa.

During an immigration investigation of Antarou Oumaro, another Nigerien suspected of overstaying his visa, an agent went to 6754 Morehampton Court in Reynoldsburg, Ohio looking for Oumaro. Petitioner answered the door and directed the agent to Oumaro's room. The agent also inquired about Petitioner's immigration status, to which Petitioner responded that his name was Wilfredo Cabrera and that he was a United States citizen from Puerto Rico. At this point, another agent began speaking to Petitioner in Spanish, but Petitioner did not understand him. This further raised the suspicions of the agents, who then asked for identification from Petitioner. Petitioner directed them to his bedroom, wherein the agents found an Ohio driver's license and Social Security card in Cabrera's name as well as Petitioner's Nigerien passport. Based on these discoveries, the government gave notice to Petitioner to appear before an immigration judge ("IJ").

During a removal hearing before the IJ, Petitioner conceded removability but requested withholding of removal. At the hearing, Petitioner admitted he was a Nigerien citizen and had obtained, from an individual named Raoul, Cabrera's Puerto Rican birth certificate, Social Security card, and an Ohio driver's license in Cabrera's name. Despite having earlier maintained that he did not pay Raoul, Petitioner on cross-examination admitted to sending his one and only paycheck from his job at PetSmart to Raoul. That testimony also contradicted Petitioner's prior testimony that Petitioner had not worked and that Petitioner had never used Cabrera's identity. At the close of testimony, the IJ found that the government had proved by clear and convincing evidence that Petitioner was removable and found that Petitioner had made a false claim of United States

2

citizenship. The IJ discredited Petitioner's testimony because of inconsistencies regarding Petitioner's payment to Raoul, employment within the United States, and use of Cabrera's name.

At a second hearing, Petitioner requested asylum and protection under the Convention Against Torture ("CAT"). Much of Petitioner's testimony at this hearing centered on Petitioner's claim that he and his family were slaves in Niger, having inherited his slave status from his grandfather. This was the first time that Petitioner had mentioned being a slave inasmuch as that claim did not appear in his written application for asylum. When asked, Petitioner gave varying answers about why he had not previously disclosed his slave status. Further, his testimony revealed that for long periods of time when he was living in Niger, Petitioner was not held as a slave but rather was able to live with his uncle and also to work for a non-governmental organization. The IJ again found Petitioner not credible because of inconsistencies in his testimony. Specifically, the IJ noted the discrepancy between Petitioner's claim of being a slave with his periods of apparent freedom. Additionally, the IJ found Petitioner's testimony not credible because it was contradicted by the State Department's 2009 Human Rights Report on Niger and because he had failed to mention his slave status in his written asylum application. The IJ finally found Petitioner's lack of corroboration troubling.

The IJ held that Petitioner's asylum application was untimely and denied him asylum on that basis. As to withholding of removal, the IJ concluded that Petitioner had not shown past persecution or future persecution, which are necessary predicates to a withholding claim. Lastly, the IJ held that Petitioner was not entitled to CAT protection.

Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). The BIA first determined that the IJ had correctly concluded that Petitioner's application for asylum was untimely but went on to note that Petitioner had also failed to meet his burden to establish eligibility for asylum relief. The BIA characterized the IJ's adverse credibility determination as based on two inconsistencies: Petitioner's false claim of United States citizenship and his claim regarding his slave status in Niger. The BIA affirmed the adverse credibility determination because of the contradiction between the immigration agent's discoveries and Petitioner's claim that he had never represented himself to be a United States citizen as well as Petitioner's lack of corroboration of his claim of slavery. Because of the adverse credibility affirmance, the BIA dismissed Petitioner's appeal.

## DISCUSSION

Where, as in this case, the BIA adopts the IJ's decision, we review the decision of the IJ, as supplemented by the BIA. *Karimijanaki v. Holder*, 579 F.3d 710, 714 (6th Cir. 2009). In doing so, we review legal conclusions *de novo* and factual findings under the "highly deferential substantial-evidence standard." *Dieng v. Holder*, 698 F.3d 866, 871–72 (6th Cir. 2012). Credibility determinations, like factual findings, are also reviewed for substantial evidence. *See Sylla v. INS*, 388 F.3d 924, 925 (6th Cir. 2004). Under substantial evidence review, this Court will not reverse a credibility determination or factual finding of the IJ unless it finds that "the evidence not only supports a contrary conclusion, but compels it." *See Dieng*, 698 F.3d at 871 (internal quotation marks omitted); *see also* 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.").

As in Petitioner's appeal to the BIA, Petitioner's arguments to us attack the IJ's adverse credibility determination. Petitioner first argues that his use of Cabrera's identity cannot be used to support an adverse credibility determination because the "false claim of citizenship is unrelated to his claim of asylum." Next, Petitioner argues that the lack of corroboration of his claim that he was a slave in Niger was insufficient to support the IJ's adverse credibility determination.

Both of his arguments seem to ignore the effect of Congress's passage of the REAL ID Act. While this Circuit had previously held that adverse credibility determinations could only rest on "issues that went to the heart of the applicant's claim," Congress supplanted that standard when it passed the REAL ID Act. *See El-Moussa v. Holder*, 569 F.3d 250, 256 (6th Cir. 2009) (alteration and internal quotation marks omitted). Under the REAL ID Act, which applies to Petitioner's claim, "credibility determinations are based on the 'totality of the circumstances' . . . 'without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim.'" *Id*. (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)) (emphasis omitted). Further, in making an adverse credibility determination under the REAL ID Act, an IJ may consider an applicant's statements "whenever made and whether or not under oath . . . and any inaccuracies or falsehoods in such statements." 8 U.S.C. § 1158(b)(1)(B)(iii). As to corroboration, "under the REAL ID Act, if the agency determines that an applicant should provide corroborating evidence, even if the applicant is found credible, corroborating evidence is required unless the applicant cannot reasonably obtain that evidence, and we are bound to uphold a finding that corroborative evidence is available unless compelled otherwise." *See Urbina-Mejia v. Holder*, 597 F.3d 360, 367 (6th Cir. 2010); *see also* 8 U.S.C. §§ 1158(b)(1)(B)(ii), 1252(b)(4).

The IJ's adverse credibility determination, as affirmed by the BIA, is supported by substantial evidence. The IJ heard testimony that Petitioner obtained a birth certificate and Social Security card in the name of Wilfredo Cabrera, was found with a driver's license in Cabrera's name, admitted to using Cabrera's name to obtain employment, and falsely told an immigration agent that his name was Wilfredo Cabrera and that he was a United States citizen. Having previously held that falsely representing one's citizenship status for the purposes of gaining private employment is sufficient to render an alien both statutorily removable and inadmissible, *Ferran v. Holder*, 612 F.3d 528, 531–33 (6th Cir. 2010), it is easy to find that such a false representation combined with fraudulent documentation and Petitioner's statements to the immigration agent is sufficient to support an adverse credibility determination. Further, we cannot say that the IJ's request for corroboration of Petitioner's claim of slavery was impermissible. An IJ may request such corroborating evidence even if it deems the applicant credible, 8 U.S.C. § 1158(b)(1)(B)(ii), and we may only reverse such a request if we are compelled to conclude that corroborating evidence would not be obtainable. *Urbina-Mejia*, 597 F.3d at 367. The request that Petitioner offer some evidence of his slavery, especially when his claim was undercut by the Human Rights Report on Niger and was only first brought to the IJ's attention during his final hearing, was not improper, and Petitioner's failure to bring forth any corroboration also adds to the substantial evidence supporting the IJ's adverse credibility determination. Because Petitioner supported his application solely with his own testimony, a finding that he was not credible is fatal to his claims for relief. *See El-Moussa*, 569 F.3d at 256–57.

## CONCLUSION

For the foregoing reasons, we **DENY** Petitioner's petition for review.