NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0123n.06

No. 13-3283

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Feb 11, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| Mikhail Kuznetsov, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | **On Petition for Review of Decision of** |
| Eric H. Holder, Jr., Attorney General, | ) | **Board of Immigration Appeals** |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

BEFORE:    MERRITT, BOGGS, and STRANCH, Circuit Judges.

**MERRITT, Circuit Judge.** Petitioner Mikhail Kuznetsov, a native and citizen of Russia, seeks review of a decision of the Board of Immigration Appeals affirming the denial by an immigration judge of his application for asylum, withholding of removal and protection under the Convention Against Torture. Substantial evidence supports the adverse credibility finding of the immigration judge and its affirmance by the Board of Immigration Appeals. We therefore affirm.

The basis of petitioner's claims for relief is that he suffered abuse at the hands of nationalist and fascist groups in Russia from approximately 1997 through 2006 because he publicly defended ethnic minority groups in Russia. He claims that the Russian authorities were unable or unwilling

to protect him. Petitioner owned a website design business in Moscow and he hired ethnic minority employees, such as Armenians, Azerbaijanis and Uzbeks.

During his hearing, petitioner related to the immigration judge the following incidents of harassment and violence against him, his family and his employees:

1. He received a life-threatening stab wound to the abdomen in 1997 when he intervened in a fight where "skinheads" were beating up people who were ethnic minorities. He did not report this incident to the police because he was threatened with further harm by the "skinheads" if he did so.     2. Petitioner also related several other incidents where his ethnic minority employees were targets of violence.

3. In 2004, petitioner became a volunteer for an organization known as Open Russia, which sought to address human rights issues of ethnic minority groups within Russia. Petitioner handed out flyers advertising a "hotline" number that provided legal information to victims of unlawful detention. Petitioner was detained for three days in 2005 by local police for distributing the flyers. He was not charged with anything, but was not allowed to contact a lawyer.

4. In October 2005, petitioner and two of his employees were beaten by "skinheads" affiliated with the local police. One of the employees died from a stab wound. Two weeks later, petitioner's car was severely damaged and a note left on it saying that the attack was "payment" for helping non-Russians.

5. In May 2006, petitioner was abducted by three people with shaved heads who took him to a location where people wore swastikas. They told him to stop supporting ethnic minorities and to fire his non-Russian employees or his relatives would have "problems." He was beaten and

released and was diagnosed with a concussion when he went to the hospital. He again did not report the incident to the police because it would be "pointless."

6. Open Russia closed in 2006 due to what petitioner described as a politically motivated criminal investigation of Open Russia's leaders by the Russian government.

7. Petitioner claimed his brother was injured in an automobile accident of "suspicious" origin.

8. After his arrival in the United States, petitioner learned from his business partner that people had come looking for him after he left the country.

Petitioner arrived in the United States in May 2006 and filed a timely application for asylum, withholding of removal and protection under the Convention Against Torture on February 9, 2007.

The immigration judge denied petitioner's application for asylum, finding that none of these claims were adequately documented or corroborated and finding that petitioner made prior inconsistent statements with regard to some of the claims. The Board of Immigration Appeals affirmed the immigration judge's decision, agreeing that petitioner's testimony was not credible and emphasizing the lack of corroboration of material elements of petitioner's claim with reliable evidence, despite being requested to do so repeatedly by the immigration judge.

Petitioner raises three issues on appeal. First, he contends that the Board erred in refusing to take administrative notice of the existence of the group Open Russia and that the Board should have remanded the case so that the immigration judge could give proper weight to petitioner's political activities in Russia. Second, petitioner challenges the immigration judge's adverse credibility finding, arguing that substantial evidence supports his claims. Third, petitioner contends

that due process requires that the case be remanded because the immigration judge was "unduly prejudiced" against him.

Because petitioner filed his application for asylum, withholding of removal and protection under the Convention Against Torture after May 11, 2005, the stricter review provided by the REAL ID Act of 2005 applies. 8 U.S.C. § 1252. Under the REAL ID Act, credibility determinations are based on the "totality of the circumstances" and take into account "all relevant factors." 8 U.S.C. § 1158(b)(1)(B)(iii); *El-Moussa v. Holder*, 569 F.3d 250, 256 (6th Cir. 2009). Also, under the REAL ID Act, if the immigration judge's findings are supported by substantial evidence, the adverse credibility determination is entitled to deference regardless of whether the inconsistencies "bear on the heart" of petitioner's claims. *El-Moussa*, 569 F.3d at 256.

Here, the inconsistences go to the heart of plaintiff's claims of violence against him based on his political activities. Petitioner was not credible based on numerous discrepancies and inconsistencies between his original asylum application and interview and his testimony before the immigration judge. We will focus here on the two most serious incidents on which he bases his asylum claim. Petitioner failed to claim the 1997 stabbing in his asylum application or his asylum interview, and the corroboration he provided was a medical "certificate" instead of actual hospital or doctor records. The certificate indicated that he was treated for an abdominal wound in 1995 not 1997. The certificate stated that the original documentation was lost and petitioner claimed that the certificate was all his mother could get from the hospital archives. Petitioner could not explain why he was able to get a medical "certificate" but not copies of the actual records. Petitioner also failed to bring in a doctor to testify about the scar he attributed to the stab wound, despite urging by the

immigration judge that further corroboration was needed. The other most serious inconsistency arises from petitioner's claim that he was abducted by "skinheads" in 2006. At his asylum interview he said he was abducted and only threatened with harm before being released and then later testified before the immigration judge that he was beaten unconscious during the abduction. Again, he provides no corroboration of the incident and no credible explanation for the inconsistency.

Petitioner also claims on appeal that the Board's reasoning was internally inconsistent because it affirmed the immigration judge's adverse credibility determination while rejecting and vacating the immigration judge's finding that the asylum application was frivolous. Petitioner's argument ignores the fact that the standard for finding an application frivolous is more stringent than the finding for an adverse credibility determination. An asylum application can only be found frivolous "if any of its material elements is deliberately fabricated." 8 C.F.R. § 1208.20. The Board explained that the harsh "frivolous" finding was not supported by the record, but the adverse credibility determination was justified.

Under the totality of the circumstances, it was reasonable for the immigration judge to make an adverse credibility finding given the lack of corroboration and inconsistencies among petitioner's initial application for asylum, initial interview and hearing testimony. There is little evidence except petitioner's own testimony regarding critical elements of his claims.

Plaintiff's remaining two claims are also without merit. First, as the Board explained, it does not take evidence and therefore was prohibited from taking administrative notice of the existence of Open Russia. But, as the Board correctly points out, even if it were to take administrative notice of the existence of Open Russia, it is of no importance. It is not the existence or nonexistence of the

organization that causes petitioner's claims to fail; it is his lack of credibility and failure to provide corroboration for most of the evidence. Petitioner also contends that the immigration judge was hostile and "unduly prejudiced" toward him so that his due process rights were violated. Petitioner did not raise this claim in his appeal to the Board of Immigration Appeals, and it is therefore dismissed for failure to exhaust administrative remedies. 8 U.S.C. § 1252(d)(1). In any event, our review of the record demonstrates that the immigration judge probed petitioner as to the omissions and inconsistencies in his story and urged him to submit corroborating evidence to support his claims. The record does not demonstrate hostility or prejudice against petitioner.

For the foregoing reasons, we affirm the decision of the Board of Immigration Appeals.