NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0040n.06

No. 18-3511

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MD ANWAR HOSSAIN, | ) | **FILED**<br>Jan 24, 2019<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| MATTHEW G. WHITAKER, Acting Attorney | ) | BOARD OF IMMIGRATION |
| General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | |
| | ) | |

Before: CLAY, COOK, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. After the Department of Homeland Security began removal proceedings against him, MD Anwar Hossain sought asylum, withholding of removal, and protection under the Convention Against Torture. An immigration judge (IJ) found Hossain not credible, denied relief, and ordered Hossain removed from the country. The Board of Immigration Appeals (BIA) affirmed. Because substantial evidence supports the IJ's adverse credibility determination, we DENY Hossain's petition for review.

I.

At a hearing before the IJ, Hossain testified that he was born in Burma (now Myanmar) but was relocated to Bangladesh when he was around one year old. He further testified that he was adopted as an infant but that his adoptive parents became abusive toward him once they had children of their own. According to Hossain, his adoptive parents, with the assistance of a broker,

obtained a Bangladeshi passport for him, and he then entered the United States on a non-immigrant visa in October 2013, at the age of 22, under the guise of attending a robotics competition with his university. Hossain remained in the United States.

A few weeks later, the Department of Homeland Security issued Hossain a Notice to Appear, alleging that he had obtained his visa through fraud or willful misrepresentation of a material fact and was therefore removable pursuant to 8 U.S.C. § 1227(a)(1)(A). Before the Immigration Court, Hossain conceded removability but sought asylum, withholding of removal, and protection under the Convention Against Torture. He testified that he feared returning to Bangladesh because he believed his adoptive parents would harm him or report him to the police in an effort to have him sent back to Myanmar. Hossain also testified that he feared being mistreated if he were to return to Myanmar due to his Muslim faith.

The IJ denied Hossain's application for relief and ordered him removed to Bangladesh. The IJ determined that Hossain lacked credibility, citing "the significant discrepancies within [Hossain's] testimony and between his testimony and asylum application," and the implausibility of some of Hossain's testimony. The IJ concluded that Hossain had not met his burden of establishing relief from removability. In the alternative, the IJ determined that, even if Hossain's testimony had been credible, the facts alleged still would not entitle him to asylum, withholding of removal, or protection under the Convention Against Torture because Hossain failed to meet his burden to demonstrate past persecution or a well-founded fear of future persecution.

Hossain appealed to the BIA, but the BIA dismissed Hossain's appeal, concluding that the IJ had not erred by refusing to credit Hossain's testimony.

II.

This appeal centers around the IJ's adverse credibility determination. Hossain bore the burden to prove his entitlement to each form of relief he sought. *El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009). An adverse credibility finding is usually fatal to an applicant's ability to meet this burden. *See id.* at 256–57; *Korir v. Sessions*, 700 F. App'x 514, 519 (6th Cir. 2017) ("[I]f the IJ finds that an applicant is incredible, and there is no independent persuasive evidence, this 'necessarily disposes' of his application [for relief from removal]." (quoting *Slyusar v. Holder*, 740 F.3d 1068, 1074 (6th Cir. 2014))). "We review the IJ's credibility determination under the deferential 'substantial evidence' standard." *El-Moussa*, 569 F.3d at 255 (citation omitted). We must treat the credibility determination as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* at 256 (quoting 8 U.S.C. § 1252(b)(4)(A), (B)).

Hossain objects to the adverse credibility determination generally but identifies no specific errors the IJ made in deeming his testimony inconsistent or implausible. Rather, Hossain merely contends that "[i]n finding Mr. Hossain not to be credible, the Immigration Judge cite[d] minor inconsistencies that d[id] not go to the heart of Mr. Hossain's claim" and that "these inconsistencies reveal nothing about Mr. Hossain's fear for his safety and are, rather, confusion about specific dates."

But contrary to Hossain's assertion, the IJ did not need to ground his adverse credibility determination solely in inconsistencies that went to the "heart" of Hossain's claim. "Under the REAL ID Act, credibility determinations are based on the 'totality of the circumstances' and take into account 'all relevant factors.'" *Id.* at 256 (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)). The relevant factors include:

> [T]he demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the

applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements . . . .

8 U.S.C. § 1158(b)(1)(B)(iii) (asylum); *see also id.* at § 1229a(c)(4)(C) (listing the same factors for credibility determinations made in removal proceedings). The IJ may consider inaccuracies or falsehoods, "*without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.*" 8 U.S.C. § 1158(b)(1)(B)(iii) (emphasis added); *id.* at § 1229a(c)(4)(C) (same).

A review of the IJ's adverse credibility determination, moreover, shows that the IJ dutifully weighed the relevant factors, identified a host of inconsistencies—some of which went to the heart of Hossain's claim—and found key portions of Hossain's testimony implausible. Take, for example, the inconsistencies between Hossain's oral testimony and his written asylum application. Hossain wrote on his asylum application that he left Myanmar at the age of four or five, but he testified that he left Myanmar when he was one. More critically, Hossain made no mention of physical abuse by his adoptive parents when asked to disclose on his asylum application whether he had experienced harm, mistreatment, or threats in the past by family or friends, yet he later testified that his adoptive parents abused and tortured him for years. This abuse was one of the main reasons Hossain purportedly feared returning to Bangladesh and thus went to the heart of his request for relief from removability.

Hossain also contradicted himself at the hearing. He testified that he "did not study in higher school or high school" and therefore could not understand the visa and passport documents he signed. But under further questioning, he admitted that he had graduated from high school.

The IJ also identified contradictions and inconsistencies in Hossain's testimony regarding his biological and adoptive families, including the existence of his siblings and their ages.

The IJ also found "key parts of [Hossain's] testimony not plausible." Specifically, the IJ stated:

> [Hossain] testified that he was afraid of returning to Bangladesh because his adopted parents and the broker they hired told him many times that if he returns, they will report him to the police or kill him. Yet, [Hossain] also testified that they hired a broker for between thirty to forty lakh to get him a Bangladeshi passport and a United States visa, which is approximately $4,000. [Hossain] also testified that his adopted parents paid money for him to come to the United States because they did not want him to live with them anymore and this was the only way they could get rid of [him]. This testimony does not align with [Hossain's] expressed fear of returning to Bangladesh and having his parents report him to the police, who would then remove him back to Burma. Assuming [Hossain's] assertion that his adopted parents wanted to get rid of him, it would have been much easier for them to report him to the police while he was living there, instead of hiring a broker and arranging his travel to the United States.

Hossain does not argue that the IJ erred in finding this portion of his testimony, which went to the heart of his purported fear of persecution on his return to Bangladesh, implausible.

Thus, while some inconsistencies in Hossain's testimony may have been minor, others were central to his application for asylum and his claim that he had suffered, or would suffer, persecution in Bangladesh. *See Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004) (stating that for an alien to establish eligibility for asylum, he "must demonstrate . . . that he has suffered past persecution or has a well-founded fear of future persecution"). We cannot, therefore, say that "any reasonable adjudicator would be compelled to conclude" that Hossain was credible. *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)). As a result, substantial evidence supported the IJ's adverse credibility determination.

The IJ and BIA found the adverse credibility determination fatal to Hossain's ability to demonstrate eligibility for relief from removal. Hossain, however, contends that the IJ and BIA

failed to consider "voluminous documents" he submitted "detailing the deplorable situation for those who are Muslim in Bangladesh and the Rohingya of Myanmar." Hossain says these documents establish a well-founded fear of persecution upon removal, apparently regardless of whether his testimony was credible. But the IJ's opinion makes clear that he considered the relevant documentary evidence. The IJ detailed the documentary evidence in the opinion and referenced the evidence throughout the analysis. Hossain does not explain what evidence the IJ overlooked. Nor does he explain how the documentary evidence, standing alone, satisfies his burden of establishing eligibility for relief. The IJ and the BIA, therefore, did not err by concluding that Hossain failed to establish eligibility for asylum, withholding of removal, or protection under the Convention Against Torture. *El-Moussa*, 569 F.3d at 256–57; *Yu*, 364 F.3d at 703 n.3 ("Since [the petitioner] does not establish eligibility for asylum, he does not meet the more stringent standards required for withholding or the [Convention Against Torture].").

Finally, Hossain argues that the IJ erred by ordering him removed to Bangladesh instead of Myanmar. But Hossain admitted he lived almost his entire life in Bangladesh before coming to the United States. And Hossain's Bangladeshi passport, which identified him as a Bangladeshi national, was found valid. The IJ's decision to remove Hossain to Bangladesh was not erroneous. *See* 8 U.S.C. § 1231(b)(2)(D) (stating that where, as here, the alien does not formally designate a country for removal, "the Attorney General shall remove the alien to a country of which the alien is a subject, national, or citizen").

\* \* \*

We DENY the petition for review.