NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 14a0111n.06

No. 13-3527

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Feb 07, 2014

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| SALVADOR DIAZ-AGUILAR, | ) | |
| | ) | |
| Petitioner, | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| ERIC H. HOLDER, JR., Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | |

BEFORE: COLE and ROGERS, Circuit Judges; HOOD, District Judge.[*]

PER CURIAM. Salvador Diaz-Aguilar, a citizen of Mexico, petitions through counsel for review of an order of the Board of Immigration Appeals (BIA) dismissing his appeal from a decision of an immigration judge (IJ) denying his applications for withholding of removal and protection under the Convention Against Torture (CAT). After an initial review, this court decided that oral argument would not be necessary to resolve this case. On further consideration following the filing of the reply brief, we reaffirm that oral argument is not needed.

Diaz-Aguilar was born in Mexico in 1967. He entered this country illegally in 2001. When placed in removal proceedings, he applied for the above relief. He testified that he formerly worked as a taxi driver in Veracruz, Mexico. The man in charge of the taxi operation required the taxi drivers to support the political party he favored, attend meetings, drive others to meetings, participate in street blockages favorable to the party, and vote for the party's candidates. Further, he charged the taxi drivers fees for the privilege of being allowed to

---

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

operate.  One such fee was a charge to have daily car washes at facilities owned by the same man who operated the taxi service.  Diaz-Aguilar testified that he was upset by this requirement and confronted the operator about his grievances.  He was fired on the spot.  Approximately one week later, three of the taxi service operator's bodyguards beat him in his home and told him he must leave town.  This incident prompted Diaz-Aguilar to come to the United States.  Diaz-Aguilar attempted to introduce newspaper articles concerning the taxi operation into evidence.  However, the articles were not translated by a certified translator as required by the regulations.  Instead, Diaz-Aguilar had used a computer translation program, which resulted in very poor translations.  Diaz-Aguilar's counsel asked the IJ to accord the articles whatever weight he found appropriate.  At the conclusion of the hearing, the IJ declined to accept the articles into evidence.

The IJ found that there were discrepancies between Diaz-Aguilar's testimony and the documentary evidence that called his credibility into question.  Specifically, he pointed out that Diaz-Aguilar testified that other directors of the taxi service were present when he confronted the operator, but in his written statement only said that the operator's bodyguards were present.  Furthermore, the IJ noted that Diaz-Aguilar wrote that the operator had taunted Diaz-Aguilar about filing a lawsuit against the operator in his statement, but testified that there had been no discussion of a lawsuit.  Diaz-Aguilar also indicated that he was beaten inside his home, but his neighbor reported that the beating took place outside.  As he was describing the attack, Diaz-Aguilar initially testified that the men had pushed open his door, but had written in the statement that they broke into his home.  After this inconsistency was pointed out, Diaz-Aguilar clarified that the attackers had in fact kicked open the door.  Finally, the IJ found Diaz-Aguilar's insistence that the taxi service operator could learn whether Diaz-Aguilar had voted for his party's candidates incredible.  Even if Diaz-Aguilar's story were accepted, the IJ also found that

he had not presented any persuasive argument as to why he could not relocate elsewhere in Mexico. Finally, the IJ concluded that the confrontation with the taxi service operator was only a personal dispute and not based on the protected ground of political opinion. Accordingly, the IJ denied withholding and relief under the CAT. Although Diaz-Aguilar was granted the alternate relief of voluntary departure, he failed to post the bond required. Diaz-Aguilar appealed to the BIA, which dismissed the appeal after agreeing with the IJ's finding that Diaz-Aguilar's testimony was not credible.

In his brief before this court, Diaz-Aguilar challenges the IJ's and BIA's credibility finding. He also argues that he was denied due process when the newspaper article computer translations he proffered were not accepted into evidence.

We must uphold the denial of relief unless it is manifestly contrary to law and the evidence compels a contrary conclusion. *Almuhtaseb v. Gonzales*, 453 F.3d 743, 749 (6th Cir. 2006). To be entitled to withholding of removal, Diaz-Aguilar was required to demonstrate a clear probability of persecution based on his political opinion if he returned to Mexico. *See Zoarab v. Mukasey*, 524 F.3d 777, 782 (6th Cir. 2008). To be entitled to protection under the CAT, he was required to demonstrate that it is more likely than not that he would be tortured if he returned to Mexico. *Id.* at 783. Absent credible testimony, Diaz-Aguilar could not establish eligibility for either withholding or CAT relief. *See El-Moussa v. Holder*, 569 F.3d 250, 256-57 (6th Cir. 2009). The IJ's and BIA's credibility finding is a factual finding that cannot be reversed unless the evidence compels a contrary conclusion. *Id.* at 256. Diaz-Aguilar argues that his statements about who was present when he confronted the taxi service operator were not necessarily contradictory, as both the bodyguards and other directors could have been there. Furthermore, Diaz-Aguilar contends that any inconsistency over whether a lawsuit against the

leader of the taxi organization was discussed was a matter of semantics. He also argues that his neighbor's statement could be construed to mean that she saw him and his attackers outside his house after they had beaten him inside, and that his description of how the attackers entered his home in the application did not directly contradict his testimony about the incident. However, we are not compelled to adopt these explanations. Diaz-Aguilar also does not address the IJ's finding that his testimony that his voting record was available to the taxi service operator was incredible. Because the record does not compel a finding that Diaz-Aguilar's testimony was credible, he cannot succeed on his claims for withholding and relief under the CAT.

Finally, Diaz-Aguilar argues that the IJ denied him due process by refusing to accept the computer translations of newspaper articles he proffered. However, his counsel clearly knew that the translations were problematic, and did not request a continuance to obtain proper translations. The IJ was not required to give notice that the translations were faulty and an opportunity to correct them. *See Rapheal v. Mukasey*, 533 F.3d 521, 530 (7th Cir. 2008). Moreover, in order to prevail on a procedural due process claim, prejudice must be demonstrated by showing that the outcome of the proceeding would have been different. *Graham v. Mukasey*, 519 F.3d 546, 549-50 (6th Cir. 2008). Because the articles did not address the issues with Diaz-Aguilar's credibility, their admission could not have altered the outcome here.

For all of the above reasons, we deny the petition for review.