RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0043p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

ARIEL LUNA-ROMERO,

                                 *Petitioner*,

    *v.*

WILLIAM P. BARR, Attorney General,

                                *Respondent*.

No. 19-3151

On Petition for Review from the Board of Immigration Appeals;
No. A 205 486 033.

Decided and Filed:  February 11, 2020

Before:  BATCHELDER, LARSEN, and MURPHY, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Scott E. Bratton, MARGARET WONG & ASSOCIATES LLC, Cleveland, Ohio, for Petitioner.  Annette M. Wietecha, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

## OPINION

_____

MURPHY, Circuit Judge.  Ariel Luna-Romero, a citizen of Argentina, entered the United States illegally.  When the government sought to remove him, he applied for asylum, 8 U.S.C. § 1158(b), withholding of removal, *id.* § 1231(b)(3)(A), and protection under the Convention Against Torture ("CAT"), 8 C.F.R. § 1208.16(c).  The Board of Immigration Appeals dismissed his appeal from the denial of these applications.  We deny his petition for review.

Luna asserts three well-known claims.  Immigrants may seek asylum if they are "refugees": those who cannot return to their home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(A).  Immigrants may also seek the withholding of their removal to a country if their "life or freedom would be threatened in that country because of [their] race, religion, nationality, membership in a particular social group, or political opinion."  *Id.* § 1231(b)(3)(A).  And they may seek relief under the Convention Against Torture if they will be "tortured" in the country to which they will be removed.  8 C.F.R. § 1208.16(c)(2).

Luna alleges that he would suffer harm in Argentina because of his race (he is indigenous) and his political opinion (he has advocated for indigenous rights).  To support this claim at his immigration hearing, he testified about past abuses in Argentina.  He noted, among other things, that during the 1990s he became the spokesperson for an indigenous group and organized about ten protests on its behalf.  The police harassed him during these protests, beating him up "half of the time" and detaining him "three or five times."  On one occasion, an officer struck him with a police baton, resulting in eight stitches in his eyebrow.  And, apart from the protests, Luna testified that the police had detained him some "57 times" over the years.

An immigration judge denied Luna's application on the ground that he had not testified credibly, concluding that he had provided inconsistent and evasive answers.  While conceding that the immigration judge "may have over-emphasized" some of the "apparent discrepancies" in Luna's testimony, the Board of Immigration Appeals upheld the adverse credibility finding as not clearly erroneous.  The Board added that Luna's other evidence could not "independently establish" any of his three claims for relief.

In his petition for review, Luna asks us to grant him relief despite this adverse credibility finding.  His request faces a high bar.  "An adverse credibility finding is usually fatal to an applicant's ability to prove entitlement to asylum, withholding of removal, or protection under the Convention Against Torture."  *Rubio-Mauricio v. Barr*, 782 F. App'x 444, 446 (6th Cir. 2019).  That is so for a combination of reasons.

Start with the burden of proof: For asylum, "[t]he burden of proof is on the applicant to establish that the applicant is a refugee," 8 U.S.C. § 1158(b)(1)(B)(i), which requires at least a "well-founded fear of persecution," *id.* § 1101(a)(42)(A); *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987). Applicants seeking withholding of removal or CAT relief likewise bear the burden of proof. 8 U.S.C. §§ 1229a(c)(4)(A), 1231(b)(3)(C); 8 C.F.R. § 1208.16(c)(2). But they must make an even more demanding showing of persecution or torture. *See Cardoza-Fonseca*, 480 U.S. at 423; 8 C.F.R. § 1208.16(b)(1)–(2), (c)(2).

Next consider the evidence that applicants use to meet this burden: In many cases, their testimony is their primary or even sole evidence. *Perlaska v. Holder*, 361 F. App'x 655, 661 n.6 (6th Cir. 2010). When an immigration judge finds an applicant's testimony not credible under those circumstances, the claim will fail because the applicant has no evidence (or insufficient evidence) apart from the discredited testimony. *See, e.g.*, *Rubio-Mauricio*, 782 F. App'x at 446; *Masiko v. Holder*, 562 F. App'x 469, 473 (6th Cir. 2014); *Ngam v. Holder*, 557 F. App'x 511, 513–15 (6th Cir. 2014); *Yan Chen v. Holder*, 423 F. App'x 557, 562 (6th Cir. 2011); *El-Moussa v. Holder*, 569 F.3d 250, 256–57 (6th Cir. 2009). The law contemplates this result. The asylum statute says that an applicant's testimony *alone* can meet the applicant's burden, "but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii). The withholding-of-removal statute incorporates that standard. *Id.* § 1231(b)(3)(C). And CAT regulations likewise note: "The testimony of the applicant, *if credible*, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 1208.16(c)(2) (emphasis added).

Lastly consider our standard of review: Courts must treat "findings of fact," including credibility findings, as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *Rubio-Mauricio*, 782 F. App'x at 446. Since 2005, moreover, the asylum statute has given immigration judges wide latitude to find testimony not credible. Contrary to pre-2005 standards, an immigration judge may now base an adverse credibility finding on an inconsistency, inaccuracy, or falsehood "without regard to whether [the] inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's

claim[.]"   8 U.S.C. § 1158(b)(1)(B)(iii); *El-Moussa*, 569 F.3d at 256.   So "even ancillary inconsistencies" may "support adverse credibility determinations." *Sylusar v. Holder*, 740 F.3d 1068, 1073 (6th Cir. 2014).   These standards also apply to requests for withholding of removal or for relief under the CAT.   8 U.S.C. §§ 1229a(c)(4)(C), 1231(b)(3)(C); *El-Moussa*, 569 F.3d at 256.

This case offers a textbook example why adverse credibility findings are "usually fatal." *Rubio-Mauricio*, 782 F. App'x at 446.   Only Luna testified at his hearing.   He presented little other evidence, most significantly two letters from friends in Argentina and reports about the treatment of indigenous people there.   On appeal, Luna nowhere suggests that, without his own testimony, this other evidence would suffice to establish the elements for any of his three claims. So Luna's request for judicial relief hinges on our overturning the adverse credibility finding. Yet the standard of review prevents us from doing so.   While not all of the inconsistencies found by the immigration judge are "beyond debate," *El-Moussa*, 569 F.3d at 255, the record does not "compel[]" the conclusion that Luna was credible, 8 U.S.C. § 1252(b)(4)(B).

We see at least three valid evidentiary grounds for the Board's decision to uphold the credibility finding.   *First*, the Board could reasonably find inadequate Luna's explanation for failing to initially disclose his criminal history.   Luna's original application said that he had never been "arrested, charged, convicted, or sentenced for any crimes in the United States[.]"   He later corrected his application to reflect several arrests and traffic citations.   Even then, his amended list of crimes did not include a Tennessee arrest for violating a protective order obtained by his fiancée.   And when asked why he had not listed his arrests in his initial application, Luna responded that "all I did, I paid for under the law.   I'm in good standing with the law.   I paid for the things that I did."   Yet at the time of Luna's hearing he had an outstanding New York arrest warrant.   The Board could find that Luna's explanation—that he did not report the arrests because he deemed himself in "good standing with the law"—showed that he might shade the truth on other matters too.   "*Falsus in uno, falsus in omnibus*—false in one, false in all." *Masiko*, 562 F. App'x at 473.

*Second*, the Board could reasonably find many of Luna's answers "vague and evasive." To list a few examples: When asked why he feared that he would be imprisoned if he returned to

Argentina, Luna responded: "Because now I'm 46 . . . years old.  And I understand that to live—it's very important to be—to have equal rights.  It's something very important.  And if I were to return, nobody is going to take away from me that, indeed, we're equal.  We're all equal."  Similarly, Luna admitted that several members of his family lived in the United States and knew about his problems in Argentina.  When asked why they had not written letters for him, Luna answered only that he was "not on speaking terms" with one of them.  He did not explain why the others could not write letters.  Likewise, when referring to an incident in which Luna had fought an Argentine police officer, Luna's counsel asked him: "What were you charged with?"  Luna responded: "Because I locked the doors using my keys.  I said, 'Let's talk.'"  Luna's many non-answers support the Board's decision that he intentionally gave vague and evasive testimony.

*Third*, the Board could reasonably find that Luna "was not accurate and forthcoming" about his whereabouts over the years.  His application stated that he lived in Texas from 2000 to 2004.  Yet he admitted at his hearing that he had lived in New York for a month in 2001.  His application stated that he had never "applied for or received any lawful status in any country other than" Argentina.  Yet he admitted at his hearing that he had received temporary residency in Chile in 2010.  His application required him to list the countries in which he had resided or traveled after leaving Argentina.  As corrected, his application reported that he had lived in Chile from 2009 to 2011.  Yet he said at his hearing that he was in Chile for "[j]ust a few months" in 2010.  Luna also testified that he had lived in Mexico from 2011 to 2012 because it had taken him "almost a year to get" to the United States.  But his application nowhere mentions a year-long stay in Mexico.

Luna's contrary arguments do not change things.  He begins by discussing some other inconsistencies found by the immigration judge that we agree were questionable.  The judge, for example, noted a typographical error about Luna's birthdate.  The Board, however, disavowed reliance "on inconsistencies that are not supported by the record."  And the Board identified plenty of irregularities that undoubtedly are supported by the record.  "[G]iven the other bases underpinning the adverse credibility finding," we need not decide whether some of the more

questionable conclusions, "standing alone, would be sufficient to sustain" that finding. *Thayaparan v. Sessions*, 688 F. App'x 359, 365 (6th Cir. 2017).

Luna also challenges the characterization of his testimony as evasive. He claims that he was "providing context" in some of his longer windups, and that the immigration judge failed to recognize "the complexity" involved. Such an explanation might be "plausible," but a plausible explanation is not "enough on appeal to overcome an adverse credibility determination." *Nolasco-Gonzalez v. Barr*, 769 F. App'x 318, 320–21 (6th Cir. 2019).

Luna next argues that the Board wrongly faulted him for correcting his application to account for his criminal history. The Board did no such thing. It explained that the corrections themselves did not "support[ ] a negative inference." Instead, the Board faulted him for his inadequate explanations for the initial omissions. That "lack of persuasive explanation" is relevant. *Lizhi Shi v. Sessions*, 751 F. App'x 684, 690 (6th Cir. 2018). The Board could conclude that Luna's own view that he had "paid for all of the things that [he] did" is not a good reason to give false responses on an asylum application.

As for his inconsistent testimony about his whereabouts over the years, Luna says the discrepancies were minor and unrelated to his persecution in Argentina. Since 2005, however, courts may no longer require that inconsistencies "bear on the heart of [an applicant's] claim" to support an adverse credibility finding. *El-Moussa*, 569 F.3d at 256.

Lastly, Luna argues that the Board ignored the other evidence that corroborated his story. Not so. The Board, for example, did acknowledge the evidence about Argentina's treatment of indigenous people generally, but considered it insufficient to establish persecution against Luna specifically. Luna also cites two letters from friends who described Luna's experiences in Argentina. These letters do complement his testimony to some extent. They do not, however, compel the conclusion that Luna was credible, particularly in light of the lack of testimony from sources such as family members here in the United States.

"Some of these inconsistencies, in isolation, may seem like small potatoes. What counts, however, is that their cumulative effect is great." *Pan v. Gonzales*, 489 F.3d 80, 86 (1st Cir. 2007). The Board reasonably upheld the adverse credibility determination. That decision,

combined with a lack of independent evidence, bars Luna from obtaining the three types of relief that he seeks.

We deny the petition for review.