NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0539n.06

Case No. 25-3325

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Nov 24, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| JOSE SAUL OLVERA AGUILERA, | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| PAMELA BONDI, Attorney General, | ) | APPEALS |
| Respondent. | ) | |
| | ) | OPINION |
| | ) | |

Before: SUTTON, Chief Judge; MURPHY and BLOOMEKATZ, Circuit Judges.

SUTTON, Chief Judge. Jose Saul Olvera Aguilera petitions this court for review of the Board of Immigration Appeals' final order of removal against him. Because Olvera Aguilera failed to exhaust some claims and others fail on the merits, we deny the petition.

In 2018, Olvera Aguilera, a native of Mexico, applied for asylum, withholding of removal, and protection under the Convention Against Torture. He alleged persecution against his family by a criminal gang called La Union Tepito.

Olvera Aguilera testified in support of his application. He described La Union's attacks against him, his father, and his mother's business, and claimed that La Union killed his uncle. During Olvera Aguilera's testimony, which he delivered in Spanish with the assistance of an interpreter, certain phrases posed translation issues. When this happened, the Immigration Judge sought clarification and resolved the confusion. Outside of his testimony, Olvera Aguilera

provided two relevant pieces of evidence. He submitted his birth certificate and the death certificate of his uncle, Jose Trinidad Hernandez Olvera. The death certificate labels his uncle's death a homicide.

The Immigration Judge found that Olvera Aguilera's testimony was not credible and that he failed to cure that problem with corroborating evidence. The Board of Immigration Appeals affirmed this adverse credibility finding, noting inconsistencies between Olvera Aguilera's testimony and application relating to when he entered the country, where he has lived and worked since, and the circumstances of La Union's attacks against him and his father.

On appeal, we view the agency's legal conclusions with fresh eyes and will uphold its fact findings unless a "reasonable adjudicator would be compelled to conclude to the contrary." *Vasquez-Rivera v. Garland*, 96 F.4th 903, 907 (6th Cir. 2024) (quoting 8 U.S.C. § 1252(b)(4)(B)).

*Adverse credibility finding*. Olvera Aguilera first challenges the adverse credibility finding. "An adverse credibility determination is fatal to claims for asylum and relief from removal, preventing such claims from being considered on their merits." *Slyusar v. Holder*, 740 F.3d 1068, 1072 (6th Cir. 2014). One answer to inconsistent testimony is independent evidence that corroborates the applicant's current account. *Compare Zhao v. Holder*, 569 F.3d 238, 248–49 (6th Cir. 2009) (affirming adverse credibility determination where petitioner provided no corroborating evidence), *with Mapouya v. Gonzales*, 487 F.3d 396, 409–10 (6th Cir. 2007) (rejecting adverse credibility finding in part due to corroborating evidence). To obtain relief on this ground, the applicant must show that the independent evidence compels a different result. *Luna-Romero v. Barr*, 949 F.3d 292, 297 (6th Cir. 2020).

There is some debate whether Olvera Aguilera raised this argument below. We need not resolve the point, however, as the challenge fails either way.

The Board identified several inconsistent features of his testimony, none of which he challenges on the merits. Olvera Aguilera's application stated that his father came to the United States after La Union attacked him twice, but he testified that his father came to the United States after just one attack. His application claimed that La Union attacked him prior to his uncle's death, but he testified that the attack occurred after his uncle's death. On top of these inconsistencies, his testimony about when he came to the United States, where he worked, and where he lived differed from his application in several material ways.

Regrettably for Olvera Aguilera, his two pieces of documentary evidence "do not . . . compel the conclusion that [he] was credible." *Luna-Romero*, 949 F.3d at 297; *accord Seo v. Holder*, 533 F. App'x 605, 614 (6th Cir. 2013). Here is what he produced: his birth certificate with the last name "Olvera," and his uncle's death certificate with the same last name. This independent evidence at best corroborates his relation to a man—his uncle—whose death Mexican authorities deemed a homicide. But he did not provide evidence outside of his own testimony that La Union committed the homicide in an act of persecution against his uncle (Jose Trinidad) or his family more generally. Nor do the documents corroborate the rest of the testimony that the Board affirmed as inconsistent, such as the timeline of La Union's attacks, the date of Olvera Aguilera's entry to the United States, his various claimed residences in the United States, and his employment history since arrival.

Olvera Aguilera argues that we must remand the case to the agency because the Immigration Judge incorrectly found that the death certificate did not show credible evidence of his relation to his uncle, given that the certificate confirms that he and Jose Trinidad share a surname. But that is not what the Board did. It just ruled that the documents did not suffice to make up for all of the inconsistencies in this testimony. That his uncle was murdered, to repeat,

does not require the conclusion that La Union committed the murder. And the two documents, to repeat, did nothing to explain the other inconsistencies in his application and testimony about when he arrived, and where he has lived and what he has done since arriving in the United States.

*Due Process*. Olvera Aguilera also argues that the Board did not provide him with a competent interpreter, violating his due process rights.

The problem with this claim is that Olvera Aguilera failed to raise it below. As we have explained, an applicant "must raise correctable procedural errors" before the Board under the exhaustion requirements of 8 U.S.C. § 1252(d)(1). *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006). That includes due process violations arising from faulty transcripts or interpretations. *See id.*; *see also Tomaszczuk v. Whitaker*, 909 F.3d 159, 167 (6th Cir. 2018). We have previously declined review even when a petitioner references an issue before the Board but fails to raise it as a due process claim. *Mazariegos-Rodas v. Garland*, 122 F.4th 655, 664–65 (6th Cir. 2024).

Because Olvera Aguilera failed to raise this argument below, we cannot consider it now. *See id.* Notably, Olvera Aguilera not only failed to raise this point below, he disclaimed any such argument below. He admitted below that he "does not claim that he was prejudiced by the interpretation." AR 19.

Olvera Aguilera contends that, because the Board addressed the translation issues in its opinion, we can address them here. He is right on the law, *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) *abrogated on other grounds as recognized in Seldon v. Garland*, 120 F.4th 527, 531 (6th Cir. 2024), but wrong on the facts. The Board acknowledged only that the Immigration Judge asked for clarification when necessary and did not rely on the translation issues in its analysis. The Board did not develop a due process argument on Olvera Aguilera's behalf that he may now carry here.

Even if Olvera Aguilera had exhausted his due process claim, it is worth adding, it would not have altered the outcome of the proceeding. The key inconsistencies in his testimony "do not relate to the translation errors" and thus could not have prejudiced him. *Gishta v. Gonzales*, 404 F.3d 972, 979 (6th Cir. 2005).

For these reasons, we deny the petition for review.