NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0582n.06

No. 25-3294

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Dec 17, 2025

KELLY L. STEPHENS, Clerk

)
)
)
SHAIBU SALU, )
    Petitioner, )
  )
v. )
  )
PAMELA BONDI, Attorney General, )
    Respondent. )
)

ON PETITION FOR REVIEW
FROM THE BOARD OF
IMMIGRATION APPEALS

OPINION

---

Before: BOGGS, BUSH, and READLER, Circuit Judges.

**JOHN K. BUSH, Circuit Judge**. Petitioner Shaibu Salu seeks review of the decision of the Board of Immigration Appeals (BIA) denying his application for asylum, withholding of removal, and relief under the Convention Against Torture Act (CAT). The Immigration Judge (IJ) made an adverse credibility finding, which the BIA affirmed. Substantial evidence supports the BIA's decision, so we **DENY** the petition for review.

**I.**

Salu, a native and citizen of Ghana, sought admission to the United States at the San Ysidro, Mexico port of entry on March 27, 2016. Three days later, a Customs and Border Protection officer interviewed Salu. In this initial interview, Salu explained that he had converted to Christianity two months prior and that his conversion was the reason for his requested admission to the United States. When asked if he read the Bible, Salu responded, "[y]es." AR 325. Two questions later, he was asked, "[w]hen was the last time you read the Bible?" *Id.* Salu responded,

"[y]ou said not to lie and I have not read one." *Id.* He claimed his purpose for entry into the United States was "[t]o be free and find a new religion. To be able to worship a new religion." *Id.* at 331. Salu added that he was threatened by "a group of guys . . . . in February 2016" for his conversion to Christianity and that he feared returning to Ghana because of future harm that may occur to him. *Id.* at 333.

On June 3, 2016, an asylum officer conducted a credible-fear interview with Salu. There, Salu explained that he converted from Islam to Christianity in January 2016 and that he did not have a conversion ceremony because he believed he would be killed if he had one. When asked if he read or owned a Bible, Salu explained that he had a Bible in Ghana and "read it every night . . . and sometimes early in the morning." *Id.* at 616. This time, Salu even quoted the Gospels of John and Matthew. Salu added that he was threatened by a group in February 2016 because of his conversion and that "a mob" later attacked him. *Id.* at 613–15. Salu added that this mob warned him to stay away from Christianity or he would be killed. When asked why he did not report this incident to the police, Salu explained that he believed the police would tell "the leader of Islam" who would then kill him. *Id.* at 617. Based upon Salu's testimony, the asylum officer determined Salu had a credible fear of persecution.

On June 5, 2016, DHS initiated removal proceedings against Salu because he did not possess valid entry documents upon his arrival at the port of entry. Salu filed an asylum application on December 14, 2016. Salu's application recounted that (1) his interest in Christianity began in January 2015; (2) he was threatened about his conversion in September 2015; and (3) he was subsequently attacked on November 7, 2015, by a group of "about 15 people" because of his "conversion to Christianity." *Id.* at 460.

Salu testified before the immigration court about the merits of his asylum claim in August 2021. The IJ then made an adverse credibility determination against Salu based upon the major inconsistencies between Salu's initial border interview, credible-fear interview, asylum application, and documentation provided to support his asylum claim. The IJ emphasized a notable inconsistency between Salu's testimony at his merits hearing and his testimony at his credible-fear hearing and border interview. At Salu's merits hearing, he claimed that he began attending church in 2014, that a baptismal certificate detailed his date of conversion as January 10, 2015, and that he was later attacked in November 2015. However, as noted, Salu's testimony at his border and credible-fear interviews stated that he converted to Christianity in January 2016, that he was threatened in February 2016, and that he did not participate in a conversion ceremony at any time.

Relying on these major inconsistencies, the IJ determined that Salu was not credible and denied his claims for asylum, withholding of removal, and relief under CAT. On appeal to the BIA, Salu challenged the IJ's adverse credibility determination. The BIA affirmed. In adopting the IJ's reasoning, the BIA explained that the IJ's adverse credibility determination was supported by "specific, cogent reasons." The BIA likewise concluded that Salu waived any challenge to the IJ's rejection of his CAT claim. Salu timely petitioned this court to review the BIA's order.

## II.

To claim asylum, an applicant must demonstrate that he is a refugee, which requires a showing of persecution based upon "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1158(b)(1)(B)(i). The IJ must find that the applicant's testimony "is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." *Id*. § 1158(b)(1)(B)(ii). An IJ has wide discretion in deciding credibility. His decision may be based on inconsistencies in "written and oral statements," and he may rely on

"any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." *Id*. § 1158 (b)(1)(B)(iii). And an adverse credibility finding is usually fatal to an applicant's request for asylum, withholding of removal, or protection under CAT. *Luna-Romero v. Barr*, 949 F.3d 292, 294 (6th Cir. 2020).

We review the BIA's opinion if the BIA issues a reasoned decision, and if it adopts the IJ's reasoning, we review the IJ's decision. *Gilaj v. Gonzales*, 408 F.3d 275, 282–83 (6th Cir. 2005) (per curiam); *Kolov v. Garland*, 78 F.4th 911, 920 (6th Cir. 2023), *abrogated in part on other grounds by Riley v. Bondi*, 145 S. Ct. 2190 (2025). The IJ's credibility determination must be affirmed "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). This standard is the same as the highly deferential substantial-evidence standard. *El-Moussa v. Holder*, 569 F.3d 250, 256 (6th Cir. 2009). We affirm if the credibility determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir. 2001) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)).

**III.**

The BIA reasonably relied on two sources of inconsistency in affirming Salu's adverse credibility determination. *First*, Salu's testimony from the immigration merits hearing differed significantly from his statements in his prior interviews. *Second*, the corroborating evidence submitted by Salu contained further inconsistencies with his testimony. These inconsistencies are sufficient grounds to uphold the BIA's and IJ's decisions.

4

### A.    Salu's Inconsistent Testimony

Salu made inconsistent statements about four things: church attendance, baptism, physical harm, and departure.  In Salu's initial border interview in March 2016, he explained that he began attending church in January 2016, that he was physically harmed in February 2016, and that he left Ghana shortly after he was harmed on February 24, 2016.  Two months later, in his credible-fear interview, Salu similarly testified that he converted to Christianity in January 2016, that he was physically harmed and threatened in February 2016, and that he did not have a conversion ceremony in Ghana.  But Salu changed his tune before the IJ.  There, Salu testified that he began attending church in 2014, that he was baptized on January 10, 2015, that he was attacked on November 7, 2015, and that he departed from Ghana in March 2016.  Salu's inconsistent timeline raises serious concern, and we have found similarly inconsistent chronologies to be sufficient grounds for an adverse credibility determination.  *See Luna-Romero*, 949 F.3d at 296; *Jolon-Velasquez v. Garland*, No. 21-3029, 2021 WL 5013818, at *5 (6th Cir. Oct. 28, 2021); *Ruano-Flautero v. Bondi,* No. 24-4015, 2025 WL 1939294, at *2 (6th Cir. July 15, 2025).

### B.    Contradictory Corroborating Evidence

Documentation that contradicts an applicant's testimony is often sufficient grounds for an adverse credibility determination.  *Bi Qing Zheng v. Lynch*, 819 F.3d 287, 295 (6th Cir. 2016) (application documents); *Ali v. Bondi*, No. 24-3867, 2025 WL 2955172, at *5 (6th Cir. Oct. 20, 2025) (newspaper articles and medical records).  And there is plenty of contradictory documentation here.

Salu provided several supporting letters to the IJ.  Those letters contained inconsistencies with Salu's sworn testimony.  One supporting letter claimed that Salu was attacked by four people.  But Salu's asylum application claimed there were roughly 15 people in the mob that harmed him.

Another supporting letter claimed that Salu's church was attacked, that the letter's author paid for Salu's travel, and that the letter's author attended church with Salu. But before the IJ, Salu claimed that his church had never been attacked, that the letter's author had not financially assisted him, and that he did not even know the letter's author. Yet another letter submitted in support explained that the author knew Salu from school and that Salu had experienced multiple assaults. But again, Salu's testimony before the IJ was inconsistent with this letter: he testified that he did not know the author and noted that he was only physically harmed once. In a final letter of support, another supporter claimed he was attacked along with Salu. But Salu testified before the IJ that he had been the only one attacked. These contradictions are reasonable, substantial, and probative evidence of his lack of credibility.

\* \* \*

Salu acknowledges his inconsistent timeline and argues that his inattentiveness to dates "should not have [been] given significant weight" in his adverse credibility determination because they concern "immaterial matters . . . ." Petitioner Br. 22. We disagree for two reasons.

*First*, the inconsistencies in the testimony—when he converted to Christianity, when he was first attacked or threatened for doing so, whether and how often he read the Bible, and whether he underwent a formal conversion ceremony—concern the core of Salu's claim that he was fleeing persecution based on his Christian faith. *Second*, and more importantly, IJs have discretion to decide adverse credibility findings on "any inaccuracies or falsehoods in such statements, *without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim*, or any other relevant factor." 8 U.S.C. § 1158(b)(1)(B)(iii) (emphasis added). So whether the inconsistencies concern "immaterial matters" is, well, immaterial.

6

In sum, the IJ's decision—adopted by the BIA—reasonably relied on both the testimony and supporting documentation in its adverse credibility determination. And given the numerous inconsistencies in Salu's testimony and supporting documentation, we hold that the adverse credibility determination was supported by substantial evidence. With no other independent evidence corroborating his claims, the adverse credibility determination is dispositive in resolving the merits of Salu's claims. *See Luna-Romero*, 949 F.3d at 295 (recognizing an adverse credibility finding is fatal when the primary evidence used to support an asylum, withholding, or CAT claim is the petitioner's own testimony).

## IV.

For the foregoing reasons, the petition for review is **DENIED.**